[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-11713

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**July 21, 2005**
**THOMAS K. KAHN**
**CLERK**

D. C. Docket No. 02-00991-CV-WS-L

VIOLA WILLIAMS UNDERWOOD,

Plaintiff-Appellant,

versus

PERRY COUNTY COMMISSION,
ALBERT TURNER, ALBERT PAIGE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(July 21, 2005)**

Before CARNES and PRYOR, Circuit Judges, and FORRESTER[*], District Judge.

---

[*] Honorable J. Owen Forrester, United States District Judge for the Northern District of Georgia, sitting by designation.

FORRESTER, District Judge:

Plaintiff, Viola Williams Underwood, filed suit against Defendants, Perry County Commission and Albert Paige, the Superintendent of Roads for Perry County, contending that she was discriminated against on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause of the United States Constitution when they failed to consider, interview, or hire her as a truck driver for Perry County.[1] The district court granted Defendants' motion for summary judgment finding that Underwood could not establish a prima facie case of employment discrimination. Specifically, the district court concluded that Underwood's two citations for speeding violations rendered her ineligible for a truck driver position with Perry County despite the fact that Paige was not aware of the citations at the time he decided not to interview Underwood. On appeal, Underwood contends that the district court erred in using the "after-acquired" evidence of the speeding citations to defeat her prima facie case of employment discrimination. We review the grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-

---

[1]In her complaint, Underwood also named Albert Turner, a Perry County Commissioner, as a defendant. At summary judgment, Underwood conceded that Turner was not a proper defendant, and the district court dismissed him. Underwood does not challenge that ruling.

moving party. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004).

Viewing the facts in the light most favorable to Underwood, we find that Underwood completed a JTPA Truck Driver Training program in Selma, Alabama in January 2001. She then obtained a Class A Commercial Driver's License. By February 2001, she had completed two months of over-the-road training with a trucking company. Underwood then applied to Paige for a truck driver position with Perry County at least three times: in January, March, and May 2001. *See* Underwood Depo., at 50, 51, 54, 75-76. She even told Paige that she would take any position, whether for Class A or Class B driver.[2] *See id.* at 83. However, Underwood was not interviewed for any truck driver positions, and her name was not submitted to the Perry County Commission for hiring consideration. *See id.* at 111-12, Paige Decl., at 2.

Defendants submitted testimony that when there was a job opening in Perry County, the position would be advertised in the local newspaper and posted. *See* Deposition of Johnny Lee Flowers, at 27. Interested individuals could then submit an application through the state unemployment office. *Id.* at 23. The office would

---

[2]Class A drivers are licensed to drive vehicles that carry up to 70,000 to 80,000 pounds. Class B drivers are restricted to "straight trucks" that carry 26,000 pounds. A Class A license permits an individual to drive both Class A and Class B trucks.

forward the applications to the Perry County Commission Clerk who, in turn, would submit them to the appropriate department superintendent. *Id.* at 24-27. We find that the record does contain information concerning individuals who were hired as truck drivers during 2001 and 2002. In the spring of 2001, Drake Wright was hired by Perry County to be a truck driver. *See* Paige Depo., at 36.[3] Stanley Stewart was hired as a driver sometime between mid-2001 and early 2002. *Id.* at 34. Finally, Kwame McLiney was hired in mid-2001. *Id.* at 39. It is not clear from the record whether Underwood's application was considered as pending for all of these positions. It is undisputed that on February 11, 1998 and on March 23, 1999, Underwood was cited for driving at least fifteen miles over the speed limit.

The district court found that Underwood could not establish a prima facie case of employment discrimination. Under the now-familiar shifting framework established in *McDonnell Douglas/Burdine*[4], a plaintiff establishes a prima facie case by showing that (1) she is a member of a protected class, (2) she was qualified for a position and applied for it, (3) she was not considered for the position despite her qualifications, and (4) equally or less qualified individuals

---

[3]The record does not contain the entire transcript of Paige's deposition. As such, we consider only the testimony contained in the excerpts attached by Underwood in her response to Defendants' motion for summary judgment.

[4]*See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

outside of the protected class were considered or hired for the position. *See Wilson*, 376 F.3d at 1087, 1089. It is only after a plaintiff establishes the prima facie case that the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for its actions. *Id.* at 1087, 1089-90.[5]

A plaintiff bears the burden of establishing a prima facie case, but the burden is not an onerous one. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Based on the facts recited above, we find that Underwood has established that she is a member of a protected class who applied for a position and was not considered for it. As previously noted, however, it is not clear that Underwood can establish that other equally or lesser qualified individuals outside her protected class were hired for the position for which she applied. That is, she has not demonstrated that Wright, Stewart, or McLiney were hired in her place. The most we can glean from the record is that three male drivers were hired over the course of 2001 and 2002. Because we find Underwood's prima facie case lacking in other respects, we need not further consider this issue. Instead, we focus on the area the parties most vigorously contest -- whether Underwood can

---

[5]When Title VII and Equal Protection claims brought pursuant to 42 U.S.C. § 1983 are used as parallel remedies, the causes of action are analyzed in the same way. *See, e.g., Sinder v. Jefferson State Cmty. Coll.* , 344 F.3d 1325, 1328 & n.4 (11th Cir. 2003); *Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1082-83 (11th Cir. 1996).

satisfy the second prong of the prima facie case -- that she was qualified for the position.

We have previously discussed the type of qualifications a court may consider at the prima facie stage. In *Carter v. Three Springs Residential Treatment*, 132 F.3d 635 (11th Cir. 1998), for example, we held that only objective criteria could be considered as a qualification at the prima facie stage. *Id.* at 643-44. *See also Wilson*, 376 F.3d at 1089 (plaintiff qualified where decisionmaker stated that plaintiff was "obvious choice" and "most qualified" for the position), *Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1019-20 (11th Cir. 2001) (plaintiff qualified based on his work experience and affidavit from a supervisor). Here, the only evidence presented by the parties concerning the qualifications for a truck driver are statements by Paige. In his deposition, Paige testified that when hiring drivers, he considered skill, experience, lack of substance abuse, seniority, over-the-road experience, good driving record, and good, common-sense judgment. *See* Paige Depo., at 33-34.

Underwood argues that she was qualified for the position because she possessed a Class A driver's license and had over-the-road experience. She relies primarily, however, on the testimony of Paige, who stated during his deposition that he agreed that Underwood was qualified for both the Class A and Class B

6

driver positions. *See id.* at 88-89. We agree with the assessment of the district court that Paige's statement cannot satisfy Underwood's qualification requirement because his deposition was taken prior to the time that Underwood's two traffic convictions for serious moving violations for speeding were discovered.

After the close of discovery, Defendants submitted a declaration from Paige stating that the County learned of Underwood's two speeding tickets during the course of the litigation. Paige further testified that the two speeding tickets would have precluded Underwood from employment as a truck driver with the County. Finally, Paige stated that had he known about the tickets at the time of his deposition, he would not have testified that Underwood was qualified for the position. *See* Paige Decl., at 2. In fact, Paige testified that he considered a good driving record to be "one of the most important qualifications" for a truck driver. *See id.* at 2 (stating that a "good driving record, including no convictions for driving under the influence or serious moving violations is a qualification for a job as a truck driver with Perry County").[6]

_____

[6]Although it appears to us that Underwood might have been entitled to a reopening of discovery after the submission of Paige's declaration, because Underwood did not request such relief, we need not consider whether it would have been an abuse of discretion to deny it.

Furthermore, we agree with the determination of the district court that Paige's declaration is not inconsistent with his deposition testimony. When Paige testified at his deposition, he was not aware of the fact that Underwood had two speeding tickets and, thus, stated that she was qualified for the position. Having learned of the speeding tickets, Paige stated in his declaration that she would not be qualified for the position because of the tickets. There is no inconsistency

The key issue on this appeal, then, is whether the district court properly considered the "after-acquired" evidence of the traffic convictions to conclude that Underwood was not qualified for the position and therefore could not establish a prima facie case of employment discrimination. In *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352 (1995), the Supreme Court considered the issue of "after acquired" evidence in the context of what kind of relief would be available to a plaintiff in an employment discrimination lawsuit. There, the Court held that where a plaintiff's misconduct was not discovered until after she had been fired, the employer could not contend that the employee was fired for the nondiscriminatory reason of the misconduct. *See id.* at 359-60 ("McKennon's misconduct was not discovered until after she had been fired. The employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason."). The Court did find that the misconduct could be relevant for the purposes of determining whether the plaintiff was entitled to back pay. *Id*. at 362. As the parties recognize, however, *McKennon* is not at all on point because the defendant there conceded that intentional age discrimination was the sole reason for the plaintiff's discharge. Furthermore, *McKennon* did not discuss the use of "after-acquired" evidence to

in these statements.

8

defeat the plaintiff's burden of establishing a prima facie case of discrimination but rather viewed it in the context of the employer's production of a legitimate, nondiscriminatory reason for termination.

Few courts have addressed the use of "after-acquired" evidence with respect to a prima facie case, and those that have can be distinguished from our facts here. *See*, *e.g.*, *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001) (where the court found that the police officer plaintiff was "qualified" despite a retroactive termination by the Florida Department of Law Enforcement because the officer had spent some time on the job); *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1281 (10th Cir. 1999) (allowing "after acquired" evidence that employer had never received plaintiff's applications to rebut prima facie case because employer's reasons for failure to hire were arguably not related to an intent to discriminate).

Unlike *McKennon,* which considered an employer's proffered legitimate, nondiscriminatory reason for an adverse employment action, here, at the earlier prima facie stage, we simply look to see whether Underwood was qualified to be a truck driver for Perry County at the time she expressed interest in the position. In this case, it is a binary analysis. Underwood was either qualified or she was not. The existence or nonexistence of the speeding tickets is an objective fact. There is

no dispute that Perry County conducts a Department of Motor Vehicles check of all prospective drivers, so there is no question Underwood's speeding violations would have been discovered prior to her actual hiring. As such, we do not even reach the point of considering what may or may not have been in the mind of Paige or his stated or actual reasons for not hiring Underwood. Regardless of what Paige may have believed, Underwood could never have been given the job. Because the speeding tickets constitute objective criteria, we are less concerned with some of the pitfalls of the use of "after acquired" evidence, such as post hoc mining of an applicant's file to discern nondiscriminatory reasons for a failure to hire. We need only consider whether it would have been possible at all for Underwood to be hired. The answer to that question is an undisputed "no."

Furthermore, Underwood has proffered no evidence that any other individual with speeding violations was hired as a truck driver for Perry County. This fact distinguishes Underwood's situation from that of plaintiffs whom we have found to establish a prima facie case because candidates outside the protected class were not required to fulfill some "qualification" that was mandated upon the plaintiff. *See*, *e.g.*, *Sledge*, 275 F.3d at 1019-20 (concluding that passing written examination was not minimum job requirement because individuals outside protected class were not required to pass test); *Carter*, 132 F.3d at 643 (not

10

considering clinical experience to be a job qualification because employer did not apply that criterion to individual eventually hired); *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057 (11th Cir. 1994) (where bank hired white collection agents who did not have "clear credit" history, bank could not use allegedly poor credit history of black applicant as legitimate, nondiscriminatory reason for failure to hire).

In sum, it is not relevant that the speeding tickets were not actually considered at the time Paige made his employment decisions because nothing in the record disputes that (1) the speeding tickets would have rendered her ineligible for hiring, and (2) that no other individual with a speeding ticket was hired by the County. Underwood's two speeding tickets constitute the equivalent of her being denied a license to drive a truck by the state of Alabama. Clearly, Underwood would not be able to establish she was qualified for the position if she did not have the required state licenses to operate a truck. The speeding tickets are more than merely a reason not to hire Underwood. Under the evidence presented in the record here, they are an absolute bar to her employment. For these reasons, we find the district court did not err in using "after acquired" evidence to determine that Underwood was not qualified for the truck driver position.

Because Underwood cannot show she was qualified for the position of a truck driver, she cannot establish her prima facie case of employment discrimination, and we AFFIRM the judgment of the district court.[7]

---

[7]Because we affirm the district court's order granting Defendants' motion for summary judgment on the basis that Underwood cannot establish that she was qualified for the position of truck driver, we need not address the other insufficiencies alleged by Defendants, including whether (1) Underwood's complaint was timely, (2) Underwood adduced any evidence to establish municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and (3) Paige can be individually liable because he was not the "official decisionmaker" or in the alternative would be entitled to qualified immunity.